## UNITED STATES, Appellant

v

## THOMAS G. BENWAY, Specialist Four, U. S. Army, Appellee

19 USCMA 345, 41 CMR 345

No. 22,515

March 27, 1970

*Captain William R. Steinmetz* argued the cause for Appellant, United States. With him on the brief were *Colonel David T. Bryant* and *Major Edwin P. Wasinger*.

*Captain Robert B. Harrison, III*, argued the cause for Appellee, Accused. With him on the brief were *Colonel Daniel T. Ghent, Lieutenant Colonel Charles W. Schiesser*, and *Captain Lee A. Rau*.

## Opinion of the Court

DARDEN, Judge:

Following his pleas of guilty, the appellee was convicted by a general court-martial of three specifications involving violation of a lawful general regulation and two specifications of absence without leave. After first affirming the findings and modifying the sentence,

**345**

the United States Army Court of Military Review withdrew its decision and substituted another, setting aside the findings of guilty of violation of a lawful general regulation. As the case comes to this Court only the specifications relating to absence without leave have been affirmed, and the sentence stands as a bad-conduct discharge, total forfeitures, confinement at hard labor for six months, and reduction to the lowest enlisted grade. After the Court of Military Review set aside the findings of guilty of violation of a lawful general regulation, the Judge Advocate General of the Army certified to this Court for review this question:

Was the Court of Military Review correct in holding that MACV Directive 37-6 does not punitively apply to the appellee's purchase of dollar instruments?

The withdrawal of the first decision by the United States Army Court of Military Review and the substitution of a later one apparently resulted from the publication on August 15, 1969, of the opinion of this Court in United States v Baker, 18 USCMA 504, 40 CMR 216. The decision in this case (United States v Benway, CM 420976, September 12, 1969) by a panel of the United States Army Court of Military Review was later overruled in an *en banc* decision of the Court of Military Review in United States v Chisholm, CM 420895, December 12, 1969. The panel decision in *Benway* and the concurring/dissenting opinion in *Chisholm* both reflect a commendable desire to apply this Court's decision in United States v Baker, supra. Our conclusion, however, is that the regulation in question is not subject to the defects this Court found fatal in *Baker*.

As the certified question denotes, the appellee was charged with violating Headquarters, United States Military Assistance Command, Vietnam, Directive 37-6. The specific offenses alleged were that during different months he purchased dollar instruments in an amount larger than $200.00 a month, thus violating paragraph 38a of the Directive, the pertinent part of which reads:

"The total dollar value of US currency or dollar instruments (postal money orders, US Treasury Checks, banking paper, Military Payment Orders) purchased with MPC (Cash) or cash deposits made in MBF or USSDP in any one month will not exceed $200. . . ."

In United States v Baker, supra, this Court construed MACV Directive 65-50 as primarily prescribing procedures for the operation of military postal money order offices and as not punitively applying to an accused who purchased Treasury checks in an amount larger than the limitation the regulation established for purchasing any combination of postal money orders, Treasury checks, or banking instruments. We viewed the entire regulation as one designed more to guide those administering the postal service and accomplishing postal money order transactions than to give notice of prohibited actions involving purchase of dollar instruments.

The briefs in the instant case suggest that the *Baker* opinion is subject to two interpretations, one that the Directive did not punitively proscribe purchase of excessive amounts of Treasury checks, the other that the Directive did not punitively apply to the accused. Since our concern in *Baker* was only with an accused who had purchased excessive amounts of Treasury checks we did not decide whether the regulation would apply punitively to an accused who had purchased postal money orders or banking instruments in an amount larger than the maximum that regulation prescribed.

The regulation at issue in the instant case is distinguishable from the *Baker* one in several significant ways.

MACV Directive 37-6 has nine sections comprising fifty-five paragraphs. It covers twenty-nine pages of text. The Directive apparently was intended as a comprehensive attempt to control black marketing and to prohibit unscrupulous profiteering and differences between official and unofficial exchange rates. That the Directive is aimed at more than one objective does not necessarily make it impotent as a basis for

punishing violators if it is sufficiently definite to give notice of what conduct is necessary to avoid violating it.[1]

A comparison of the title, the purpose, and the applicability of the *Baker* and the *Benway* regulations follows:

| (Baker) | *Title* | (Benway) |
|---|---|---|
| MACV DIRECTIVE 65–50 | | MACV DIRECTIVE 37–6 |
| "Postal Service, Money Order Service." | | "Financial Administration Regulation of Currency and Operation of Military Banking Facilities." |

*Purpose*

| | |
|---|---|
| "To establish procedures governing US Postal Money Order transactions." | "This directive sets forth the procedures and responsibilities governing certain business transactions, operation of military banking facilities, *and the use of Military Payment Certificates (MPC), US Currency, local currency, and dollar instruments in the Republic of Vietnam (RVN)."* [Emphasis supplied.] |

*Applicability*

| | |
|---|---|
| "This directive is applicable to . . . personnel authorized use of US military postal facilities within the Republic of Vietnam." | "This directive applies to all persons having MPC privileges in the RVN. Any violation will subject the violator to . . . disciplinary action under the . . . Uniform Code of Military Justice. . . ." |

Directive 37–6 is basically regulatory, although it is also advisory and instructional. Various sections of the Directive (1) limit the amount of Military Payment Certificates that United States personnel may have in their possession, (2) limit the authorized sources of MPC, (3) require conversion of United States currency and dollar instruments by military persons entering Vietnam, and (4) prohibit United States personnel from dealing in MPC with persons not authorized to possess them. In addition to regulating the use of Military Payment Certificates, the Directive also regulates the use of local currency, United States currency, and dollar instruments by persons to whom the Directive applies.

We are urged to construe paragraph 38a above as a simple declarative sentence intended to guide those administering the Directive rather than to pun-

ish those subject to the Directive who exceed the limitation. Such a construction is countered by the first sentence of paragraph 2 relating to applicability, quoted above, which states that "This directive applies to all persons having MPC privileges in the RVN."

Other paragraphs of the Directive make clear that persons subject to it may violate it in ways other than by purchasing dollar instruments in excessive amounts. For example, paragraph 8 provides:

*"LIMITATIONS.* US authorized personnel shall not have in their possession an amount of MPC (Scrip) greater than is consistent with their legitimate requirements for such currency, and in no case shall an individual have in his possession in [sic] amount of MPC in excess of $1000 unless the total of his last pre-

---

[1] See generally Note, Due Process Requirements of Definiteness in Statutes, 62 Harvard Law Review 77 (1948).

vious monthly pay actually drawn in-country exceeded $1000."

The preceding paragraph uses the word "shall" instead of "will." In contrast, paragraph 13a is phrased as follows:

"Upon arrival in the RVN all US authorized personnel must declare the total amount of US currencies and dollar instruments in their possession. All US currency and dollar instruments then will be converted to MPC and/or personal accommodation rate piasters at the point of entry into the RVN. No US currency or dollar instruments, except designated coins, will be in the possession of US authorized personnel after their arrival in the RVN unless specifically authorized by this or other MACV directives."

We believe that the prohibition in paragraph 13a of the possession of United States currency or dollar instruments is no less intended as a sanction than is the limitation using "shall" contained in paragraph 8. Cf. United States v Merritt, 1 USCMA 56, 1 CMR 56 (1951). We conclude that paragraph 38a cannot reasonably be construed as anything except a prohibition against the purchase of United States currency or dollar instruments in amounts larger than the limitation this paragraph establishes. Other parts of the Directive give adequate notice that such a violation of the prohibition is punishable.

The certified question is answered in the negative.

Chief Judge QUINN and Judge FERGUSON concur.